Good morning everyone. Please be seated. Good morning. 11-0580 Peoples v. Antonio House. Would the attorneys that are going to argue both step up and identify yourselves for the record. Good morning, Good morning, your honors. Michelle Grimaldi-Stein, Assistant State's Attorney for the People of the State of Illinois. Good morning. We will give each of you approximately 15 minutes to present a coral argument and from that 48 you may save out some time for rebuttal. Thank you. All right. I did remember there is a motion to cite additional authority. Yes. We haven't resolved that yet. There was a response filed. And so at this point maybe we'll just take it with the case. All right. Okay. The motion to cite this additional, as opposed to striking something or not, whatever. And we will allow the State's response. All right. Thank you. I would like to reserve the three minutes for rebuttal, your honors. There is no need in this court for you to reconsider your sound decision as your honors correctly decided that the multiple murder mandatory natural life sentencing statute shocked the moral sense of our community here as applied to House. This is because the court was barred from considering any of the mitigating factors such as that Antonio House was only 19 years old and two months and he received the same sentence. He was not the shooter. He was at most the lookout. He had no violent criminal past. He had a rough childhood where he never knew his father. He was raised by his grandmother and his mother had passed away just shortly before this crime occurred. Aren't we under the cases, and we are here today to carefully consider only the portion of this decision relating to the sentencing, but aren't we generally in an as applied challenge required to have like an evidentiary hearing? Don't the cases tell us that? I don't believe so, your honors. And I believe your honors are referring to People v. Thompson. So in this case it's distinguishable from Thompson as in Thompson the issue was only raised the first time on appeal from the 214-01. So there is no chance for litigation on the issue. In our instance, the issue of the sentence being unconstitutional was raised on direct appeal on PC and post-APC and the counsel appointed on his PC at second stage also included this issue rely on we versus Miller. But wasn't one of the primary concerns in that Thompson case was that the defendant was raising the issue for the first time on appeal, but when the court spoke about having an evidentiary hearing, they were talking about in general when there is an as applied challenge there should be an evidentiary hearing. Now, so I don't think that it was turning on the fact that it was being raised for the first time. I think the decision was turning on the fact that there should be an evidentiary hearing where parties can present evidence to establish that the statute as applied to Mr. House is unconstitutional. Correct. Because the as applied is specifically based on the specific circumstances of the case. So in House we do have those factors here already in the record. But we don't have anything about in our decision we discussed at length the many studies that have indicated that youthful offenders and not just children that are 17 and under, but youthful offenders don't have the same kind of brain development as, say, a 30-year-old adult. I mean, there are studies. The U.S. Supreme Court cited those. But in this case, there wasn't any of that kind of information at least put into the record by the defendant, at least not here. So what is your response to that? And shouldn't there be isn't that kind of what we were saying was that the studies show that youthful offenders don't have the same brain development as a fully mature adult. So that that could be a basis for an as applied challenge. And that's kind of what the basis of all the U.S. Supreme Court cases was or were when they made these changes, great changes, to sentencing for juveniles. Right. And in Thompson, the defendant only relied on those studies. In this case, it's not only those studies that your honors relied on. It was also the mitigating factors that Meehan v. Miller relied on, the fact that the limited culpability in the crime, the fact that they had a rough childhood growing up, all of those things. Let me ask you this for a moment. Wouldn't that accomplish the purpose that you want here, to have that evidentiary hearing? Wouldn't that accomplish your purpose? Instead of fighting it, think about that. Wouldn't that accomplish your purpose? So in resentencing, obviously we would not object to a third stage evidentiary hearing versus this being denied. But if we had our preference, it would be a resentencing hearing where the court would be allowed to consider this mitigating evidence. But if you have this evidentiary hearing, then all these things can be brought out and an appropriate record can be made if this case should go further. And it would seem to be a just result. I believe, your honors, that the remanded for resentencing would also be a just result. In a third stage evidentiary hearing, the testimony that would be presumably presented could also be presented at a sentencing hearing. But perhaps we went too far when we simply said that it's as applied to him under these facts, unconstitutional, without an evidentiary hearing? In people being nitinatu, I think is how you pronounce it, it was a first stage PC and it was also an argument as as applied. It was an Eighth Amendment violation, not a portion of penalties, but it wasn't as applied. And the court remanded for resentencing did not even go to second stage. And in that court, the court found that it was because the trial court did not consider the corresponding characteristics of the defendant's youth. So I believe that would be instructive to this court to remand for resentencing. But in all these cases, particularly a 19-year-old, if this offender were 15 or 16, he would automatically be entitled to this sentencing hearing. Right. But because he's 19 and it's new territory, isn't it significant that it be shown that it's more than simply these many mitigating factors present, but also that the reason it would be constitutionally confirmed as far as Mr. House is concerned is because, as the U.S. Supreme Court pointed out, that not every 18-year-old is going to be that mature adult. There will be 17-year-olds that are well-seasoned and can function as a mature adult, but there will be many that are 20 that may not be able to function as an adult, and therefore they should be treated differently at sentencing. So there is certainly some compelling suggestion here that, as Justice Gordon said, an evidentiary hearing would actually support that result. And again, I would not oppose a third-stage evidentiary hearing. I would just prefer resentencing, as Your Honors found. I feel like that would be the most beneficial here, where the same evidence would be presented as a third-stage evidentiary hearing. It would just allow that trial court to reconsider its sentence instead of doing the third-stage evidentiary hearing, see if there's substantial showing, and then doing resentencing. As Your Honors pointed out, in Wilbur and the other U.S. Supreme Court cases relying on the research, brain development research, they have kind of drawn the line at under 18. I would argue, though, that drawing that line there, it disregards the characteristics of the older youth like House, and it fails to serve any of the penological justifications that the Supreme Court has found imperative in sentencing youth to such harsh penalties. Therefore, I think Your Honors are completely correct and well-reasoned to find in this case, even though the defendant was 19 years and 2 months, the brain research development also was just as applicable in this case as it would be for someone under the age of 18 years old. And Your Honors, in People v. Clark in 2007, a little bit different procedural posture, but the trial court during sentencing said that the general brain development research was inapplicable because the defendant failed. Was that the case that I authored? It is. Is that what you're referring to? Yes. Well, there was testimony, though, in that case. It was on the record. There was an expert. Yes. And he testified extensively about brain development. He did. However, that was only generally speaking to youths from 17, 18, 19, 20. There was no testimony that was specifically towards the defendant. And the court pointed that out and said because this testimony was only generally speaking and it was not specifically for this defendant, it's irrelevant. Then Your Honors, on appeal, found, no, it is important for the court to consider this type of research because of the evolving standards of our jurisprudence now regarding youths, and it shouldn't be discounted even though it was generally speaking. Don't you think so? I was just going to ask, aside from the age issue, what about his active participation in the offense itself? Well, I don't believe it can be characterized as active participation. Your Honors, in this opinion, found that it was not active participation. He was merely… Well, that's what the studies are. Right. He was actively participating. And I disagree with her. Okay. If you consider Elyse Clark's testimony as true, even though she's recanted it now fully, that defendant Antonio House was present at the kidnapping, and then he drove the two shooters to the scene of the murder. However, he didn't personally go to the scene of the shooting. He didn't witness it. He was merely a lookout and then drove the shooters back. In Leon Miller, he was also simply a lookout, similar to this case, and only had a few seconds to decide what to do. In this case, I would argue that Antonio House also had very limited time to decide what to do as the two highest up in his gang told him to drive them to this murder scene. So the facts in this case are, I believe, almost identical to Leon Miller, except for the fact that our client was 19 years and two months old. The cases cited by the state to contrast our facts here are very distinguishable because all of the defendants in those cases, which I'm referring to as Griffin, McCoy, and Winters, all three of those defendants had a much more active role in the crime than they did here. In one of the cases, they helped plan the crime. There was a week in between the planning and the crime for them to decide not to do it. They had the guns and they were at the scene of the shooting. So all of those factors are very distinguishable from the role that Antonio House played in this crime. Anything that you wish to add? I'm not sure if Your Honors would like any discussion on the retroactivity analysis. Well, the state makes a suggestion or argument that we have somehow created a new substantive rule. And I think we can discuss that with the attorney for the state. Okay. I don't really have any questions regarding that issue at this time. Okay. I'd simply just like to state that I don't believe Your Honors created a substantive new rule. It was as applied, so therefore it's not a new rule. And I would ask Your Honors to uphold your well-reasoned, correct finding. Thank you. Thank you. Good morning. Good morning, Your Honors. Again, my name is Michelle Grimaldi-Stein. I'm an assistant state's attorney representing the people of the state of Illinois. And I think it's important, and this Court has clearly recognized, that we have to consider this case in the procedural posture that it's in. And that procedural posture is a dismissal from a second-stage post-conviction petition where the defendant didn't raise or didn't argue that this evolving brain science he studies rendered him more akin to a juvenile. What he argued is that a 19-year-old who is simply accountable for the crime under Leon Miller was entitled to have the same considerations prior to sentencing. And the issue before this Court is whether the defendant made a substantial showing of a constitutional violation. In your argument, you do say in your petition, one of the things you do say is that at best, this case should be remanded for a third-stage evidentiary hearing where the defendant could establish his constitutional violation by a preponderance of the evidence and where the State would be able to introduce evidence proving otherwise. That is the most to which he is entitled to, but the State would argue that he's not entitled to that because that entitlement comes based on this Court's consideration of evidence that was never presented to the circuit court, that the circuit court never considered. Sure. And that's something perhaps that he could present at an evidentiary hearing. But going to this Miller case, Leon Miller, well, here, first I want to ask you this. Do you believe that it's impossible for a 19-year-old to allege a constitutional violation as applied to him in a murder case involving two victims where there is evidence presented that he's not one of those mature 18-year-olds, where there is evidence regarding his background, his life experience, and there's evidence regarding his culpability that he's not the shooter? I believe that under Pieper v. Taylor, the issue of whether an adult accomplice is eligible for a mandatory life sentence because of his active participation, and make no bones about it, this is not a Leon Miller case. We're not suggesting it is. So my opponent suggested that it was highly analogous. Okay. That the defendant may make that claim, but that based on well-established Illinois Supreme Court precedent, it does not state a constitutional violation. Well, how do you respond to the Thompson case? The Supreme Court left it very wide open, and they said in Thompson that this claim could not be raised for the first time on an appeal. The defendant in Thompson was 19 years old. He was making a claim very similar to this, and the court in that case said the appropriate form for such a claim is in a post-conviction petition, and they did not foreclose that this claim could actually exist. That is correct. I guess all I'm asking you, and I'm not saying this is the case, but is your position that a 19-year-old who didn't fire the gun, who had a background that was unlike most, that he was thrust into a gang sort of situation, and he doesn't have the kind of maturity that maybe some other 18- or 19-year-old would have, are you saying that this can't even be pled or ever advance to a third-stage evidentiary hearing? In terms of hypotheticals? Yes. Yes. In terms of hypotheticals. Let's just pretend it's a hypothetical only. I certainly think that Leon Miller gives an opening for if a trial court found a situation that if the facts warranted it, perhaps, but this is not that case. Okay. Now, in Miller, one of the things the court pointed out was the disparity in terms of active participation, and they compared and they suggested in this Leon Miller case that that's an appropriate factor, that sure, Leon Miller was only 15. Leon Miller only had a couple of seconds to decide whether to be involved. He never pulled the trigger, never held the gun, and the trial judge in that case said, I think this is unconscionable. And then the Supreme Court affirmed. But one of the things they pointed out was the convergence of the three statutes, the automatic transfer, the mandatory life, and what was the third? But when they discussed that, in their affirmance of that, they pointed out that this disparity was something that actually shocked the conscience, that a person who actually pulled the trigger would get the same sentence as an individual who was less culpable. Wasn't that something that they talked about? Because they said in Miller that they've never really said what shocked the conscience. Didn't they say that? They did say that they don't. We never defined what kind of punishment constitutes cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. This is so because as our society evolves, so too do our concepts of elemental decency and fairness, which shape the moral sense of the community. Now, our U.S. Supreme Court has clearly shown that there is an evolving sense of elemental decency as far as juveniles. Okay? Correct. So, I mean, the Supreme Court, our Illinois Supreme Court, said it's an evolving concept. It is an evolving concept. But the Supreme Court has also directed the factors to be considered in making an analysis of whether a certain sentence in a given case shocks the moral sense of the community. And the first thing that it says is that you look to legislative enactments, because when the legislature has spoken, that itself says something about the general moral ideas of the people. And in this state, the legislature has twice in the last two years actually codified and applied the concerns that were discussed in Miller, Roper, and Graham line of cases. And the legislature could have. They had all the same studies. They could have drawn the line. Well, how do you know they had all the same studies? How do you know how much really went into changing it from 17 to 18? I mean, how do you know that? Based on the language of the statute, it clearly reflects that they were codifying the concerns in Miller, Roper, and Graham. And they did not increase the age over 18. Right, but that doesn't mean that this case or some case can't be. But that's part of the analysis. You start there. Then you consider the seriousness of the offense, its prevalence and its frequency, the injury sustained by the victim's family and society, the risk of recidivism, and the legislature's right to protect. In this case, though, back in, was it 1993? I mean, the trial court absolutely had no ability to do any of that. And it still doesn't really. Isn't that true? I mean, you have the record before you. You know that the judge couldn't really consider any of that. The court did consider it because it found him that even though he was eligible for the death penalty, it determined that those factors rendered him not suitable for the death penalty. But in this case, the time that he actually was sentenced, the death penalty was not. I believe that this defendant was found eligible. I'd be wrong. As could I, Your Honor. Yeah, I'm not sure. It's been a long and dry case. Yeah, it is. Let me ask you this. We're dealing with a constitutional issue, okay? And age is involved here. There are some people who are not educated. There are some people who have problems from birth, and they may be 18 or 19, and they may have the brains of an 8-year-old or a 5-year-old. And constitutionally, as applied to them, shouldn't all that be considered in a sentencing? Well, this court, you know, I'm sorry. I don't want to blindside anybody. I happen to find a case in preparing for this argument where there was a 19-year-old defendant who qualified as mentally retarded, and this court, who was found guilty by accountability of two murders. And this court wrote an opinion saying no. Was it this panel? Was it me? No, no. It was Justice Rockford wrote the opinion. Okay. And I apologize. I don't mean to blindside anybody, but simply because the question was asked. This court found that a mandatory not lateral life sentence imposed on a 19-year-old defendant who clearly had an IQ within the range of mentally retarded did not violate our proportionate penalty clause. And, you know, I'm not sure that's something that we would agree with anyway. Right. The case was Brown, People v. Brown. And the citation is 2012, ILAP 1st, 091940. And I really had no intention of bringing that up, so I apologize. No, that's all right. It's something we can look at. I'm not sure that we would agree or say it's analogous or, you know, whatever. But if it's out there, it's out there. And Brown brings me back to Taylor, because Taylor is what controls in this case. Taylor has been reaffirmed by the Illinois Supreme Court repeatedly, most recently in Vincent Rizzo. I looked at that last night. Rizzo was the case involving a traffic citation and whether the fact that supervision wasn't allowed. Was it something like that? Yes, but the court did say that the legislature has the right to define the penalty. And all that means is that, yes, it's constitutional in the sense that it can be imposed. It doesn't mean that there isn't going to be a case where it's an as-applied challenge may stand. And I do want to ask you about that. You say we've created a substantive new rule, and basically that we're saying every 19-year-old as applied has the right to be re-sentenced. That's not in our decision. I mean, that doesn't make any sense in terms of what is an as-applied challenge. Well, the rule would be that every 19-year-old convicted of accountability, convicted of two murders under accountability, would be entitled under this decision to review of his sentence. I don't understand. How can you say that when this was an as-applied challenge? That refers to one individual. It doesn't refer to anybody else in the universe. So I don't see how this decision could ever represent what you're suggesting it represents. Certainly a number of cases have already come down where people are relying on this decision to get review of their sentences. Well, maybe they think it's a good decision. But it isn't really an as-applied challenge because there hasn't been a hearing. There hasn't been any showing. So if there is an evidentiary hearing, you get your opportunity. Mr. House gets his opportunity. And at that point, you know, it's up to the trial judge. But, you know, in your brief, you suggest that Mr. House was really in the thick of this and that he was a very, very active participant. Don't you think that's a little exaggeration of the record? No. I'll review it. And I'm not trying to diminish his culpability. But he was not a shooter. He was observed by the woman who's recanted. He was observed by her at the car. She never specifically said he was one of the many that had guns and forced them into the car. Did she say that? Eunice Clark testified that when Ted drove up, 10 gang members came running down from a hill with guns in hand and surrounded the victims and that the defendant was one of those gang members and he had a 9mm gun in his hand. Right. That demonstrates that the defendant was maybe not the mastermind, but he was involved in the planning of this crime. And he had to be told, here's where you're going to be and when we come, you come down and you do that. We'll accept all that. Okay. So then they're taken to another location. But the defendant's involvement doesn't end there because the defendant then drives the chief enforcer from the spot where the boys are abducted to the place where the execution occurs. Yes. And he's told during that ride. Now, he's already heard Ted say, these boys is about to make this case. And he knew that they could be... And he was shocked, didn't he? Yes, he did. All right. So then they go to this location. He does nothing to withdraw from the crime. That's absolutely correct. He does nothing to assist the victims. He doesn't... All of that's accurate. After he drives... In the actual execution, is there any evidence in the record that House pulled the trigger? No. Any at all? But he facilitated the people that... Yes. He was found guilty under an accountability theory. We don't have a dispute with that. But is there any evidence that he actually pulled the trigger? Does that make him not an active participant? It doesn't make him a planner. It makes him a follower, which is completely different. I mean, where is he there in the record where he actually is part of the core group that's planning the... How could he know to be... That's not my question. My question is, where is there in the record evidence to indicate that he was in the core group making the decision, what's going to happen, who's going to get shot, and how it's going to happen? There is no evidence of any meeting before this. But unless you can speculate that the defendant just happened to come along this other group and happened to join in with them and happened to run down and happened to know that he was supposed to surround these... But you're arguing that he's an active participant. And yet, in the record, it appears that he's just a follower. He's just one of the gang members that's going along. Your Honor, even if we go with your recitation of the facts, which I'm not disputing, okay, at the end of the day, he did not pull the trigger. All right? That's clear. And he's not Leon Miller. I agree with you there. He's not Leon Miller. And two young people were killed. I'm not diminishing this horrendous criminal act. It was multiple acts. But at the end of the day, even his own statement, of course, he kind of doesn't... He takes himself out of it quite a bit. But at the end of the day, there was never any eyewitness that ever suggested that he actually pulled the trigger. Now, going along with your statement that he's very active, how can you possibly say that there's not something wrong with a sentencing provision, perhaps as to him, as applied only to him, that every single... that a person who is actively engaged, like you're saying, but then doesn't pull the trigger, that the sentence should always be the same for those two? That is basic accountability law in this statement. No, I'm talking about sentencing now. I'm not talking about the guilt. That's well established. He can be held accountable. But even in the Miller case, the court pointed out the nature, almost shocking, that a person who doesn't pull the trigger gets the same sentence as an individual who pulled the trigger. Because the concept of accountability means when you facilitate a crime, when you aid and abet it, you are as just as responsible legally and therefore subject to the same punishment. Okay, but then we have a completely different notion for sentencing. And I'm not talking about his guilt or how much, you know, you argue he was active. He certainly was a participant. We're not talking about guilt today. We're talking about what a court is generally supposed to consider in sentencing. And I don't know how you can just say they're exactly the same, they should always have the same sentences. There's no proportionality problem with this case or any case, so long as they're found guilty of murder, everybody's the same. That's not what I'm asking. I'm talking about sentencing. I'm not talking about guilt. I'm not talking about accountability. I'm sorry, Your Honor. I don't mean to be frustrating. But, again, I think it brings it back to Taylor, because the Supreme Court in Taylor said adult accomplices are subject to the sentence and there's no proportionate question. Sure. But then they came up with Thompson. And in Thompson they clearly leave a path for a challenge, a claim that, as applied, a 19-year-old can attempt to make this argument in a post-conviction petition. That's what this person did. And he argued proportionality day one. He didn't step up in this post-conviction petition for the first time and say there's something wrong with his sentence. That was argued immediately after his conviction. Correct. And the court didn't believe that the circumstances that it found, the facts that it found during its trial, warranted a lesser sentence. The court gave the defendant an extended term sentence on those abductions. This was not a defendant that the court believed was deserving of leniency. This court saw those facts at trial and determined that this defendant deserved a very severe sentence. And in terms of whether ---- Did it make any difference in any event when he wasn't really able to do that? Justice Lynn did it in Miller. All right. Well, I think I understand your position. I do, I do. I just want to make sure, though, that you did say, at best this case should be remanded for a third-stage evidentiary hearing where a defendant could establish a constitutional violation by a preconderance of the evidence. I believe that based on the petition that was actually before the circuit court and the evidence presented, the defendant failed to make a substantial showing of a constitutional violation. But, yes, Your Honors, at best. Thank you very much for the privilege of arguing before you. Today will be my last argument as an assistant State's attorney. I'm retiring. Congratulations. It's been a pleasure. Thank you. We will miss you. Thank you. I just have a few points, Your Honors. One, in regard to remanding back for a third-stage evidentiary hearing, I believe it would just be a waste of judicial economy when you ---- to suggest that we need to prove how the Broad Development Studies specifically apply to the defendant. I don't believe that's necessary. When we look at Wilbur and Miller line of cases, they're not made to prove that the studies specifically apply to them. It's given as a ---- it's given because they're 17, and so they automatically apply. In this case, because of the Developmental Studies do say that they're developing up into their 20s, it should automatically apply to House. We shouldn't have to prove how it specifically applies to us. What do you say to counsel's argument about the Taylor case? What is your response? Your Honor's opinion did not conflict with it or overrule it. As Leon Miller quote found, the Taylor decision involved much different set of facts and a much different challenge in that case. In that case, it did not involve any mitigating circumstances as present here, in terms of accountability or the youth or the troubled background. Additionally, it was not an as-applied proportionate penalties violation in that case. It was simply whether or not the legislator had the power to prescribe a mandatory natural life sentence. Your Honor's opinion did nothing to conflict or overturn that. To go back to how we would present evidence of how the science applies to our client, I'm not sure how we would even do that. He was convicted, the crime was in 1993, so it's 23 years old. The state would need to prove that the science did not apply to him because he was mature. He did have a brain development. I'm not sure how you would prove that from his mindset 23 years ago. Also to clarify, he was eligible for the death penalty, and the court did find that there was mitigating circumstances, although he didn't specify which ones, to not impose the death penalty. The state is correct that in sentencing for the aggravated kidnapping, the court did impose a higher than minimum sentence. However, that was in 1997, before any of this brain research development had come about and was considered by the courts. If maybe the court had considered the mitigating circumstances in the lens of the people versus Leon Miller and the Miller-Roper cases, maybe the result would have been different. And that's exactly what we would argue should be done here, as Your Honor found, to remand for the court to simply consider these mitigating circumstances. We're not arguing, nor did the court find, that Antonio House could not be sentenced to mandatory natural life again, just simply the court needs to consider these mitigating circumstances. And lastly, would people be grounded that the state cited? I would like an opportunity to file a supplemental brief to respond to that case, if Your Honors would allow. We certainly would. If the state wants to formally cite that in a motion, you may, and then you can file a response. Thank you, Your Honors. I'd ask Your Honors to uphold your well-reasoned opinion. Thank you. Thank you both. The case was well-argued, well-briefed, and we will take it under advisement. Court is adjourned.